UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOAH SUMMERVILLE,

                Plaintiff,

– against –

GOTHAM COMEDY FOUNDATION, INC.,

                Defendant.

**OPINION & ORDER**

24-cv-01484 (ER)

R‍AMOS, D.J.:

Noah Summerville brings this action against the Gotham Comedy Foundation, Inc. ("Gotham"), alleging that they charged him convenience fees when he purchased tickets online in violation of the New York Arts & Cultural Affairs Law ("ACAL") § 25.07(4). Doc. 1.

Before the Court is Gotham's motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 15. For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

### A. Factual Background[1]

Summerville is a New Jersey resident. Doc. 1 ¶ 7. Gotham is a New York not-for-profit corporation that owns and operates the Gotham Comedy Club. *Id.* ¶ 8. On July 30, 2023, Summerville purchased three tickets to a comedy club event on Gotham's website. *Id.* ¶ 7. On November 14, 2023, Summerville purchased two more tickets on Gotham's website. *Id.* ¶ 30. In connection with both purchases, Summerville went through the following process:

First, Summerville selected the show and the date and time of the show on Gotham's website, www.gothamcomedyclub.org. *Id.* ¶¶ 9–10. He was then directed to

---

[1] The following facts are based on the allegations in the complaint, which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

the corresponding event page on www.showclix.com. *Id.* ¶ 11. On this page only a ticket price of $20 per ticket was shown. *Id.*

Summerville was then directed to the seat selection page. *Id.* ¶ 12. On hovering over a seat, again, only the ticket price of $20 per ticket was displayed. *Id.* Fields for "Service Fees" and "Additional Fees" were listed at the bottom of the seat selection page, *id*, however, both fields were empty. *Id.* After Summerville clicked on a specific seat, a service fee of $4.50 per ticket and a sales tax of $1.77 per ticket were displayed for the first time in the previously empty fields. *Id.* ¶ 13. The service fee of $4.50 per ticket was displayed in the same font, size, color, and style as the $20 ticket price. *Id.* Summerville was thus charged $13.50 in service fees for the three tickets he purchased in July 2023 and $9 in service fees for the two tickets he purchased in November 2023, for a total of $22.50. *Id.* ¶¶ 7, 30.

Summerville alleges that Gotham's conduct described as above violated the New York Arts and Cultural Affairs Law § 25.07(4) because Gotham: (1) failed to disclose the total cost of a ticket, inclusive of all ancillary fees after the ticket was selected; (2) increased the total cost of the tickets during the purchase process; and (3) failed to disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser. *Id.* ¶¶ 24–31. Summerville seeks to enjoin Gotham's conduct and recover fifty dollars in statutory damages and reasonable attorney fees. *Id.* ¶ 32.

### B. Procedural History

Summerville filed the instant lawsuit on February 27, 2024. Doc. 1. On May 20, 2024, Gotham moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 8. On May 21, 2024, the Court denied this motion without prejudice for failing to comply with the Court's individual practices. Doc. 11. On June 21, 2024, with the Court's leave, Gotham filed a second motion to dismiss. Doc. 15. Gotham argues that: (1) Summerville lacks standing; (2) it did not violate the ACAL; (3) the voluntary

payment doctrine bars Summerville's claims; and (4) Summerville does not meet the amount in controversy threshold to establish federal diversity jurisdiction.  Doc. 16.

## II.   LEGAL STANDARD

When the issue before the Court involves a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), the Court must consider the Rule 12(b)(1) motion first because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Gannon v. 31 Essex St. LLC*, No. 22 Civ 1134 (ER), 2023 WL 199287, at *2 (S.D.N.Y. Jan. 17, 2023) (internal quotation marks and citation omitted); *see also Baldessarre v. Monroe-Woodbury Central School District*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), aff'd, 496 F. App'x 131 (2d Cir. 2012).

Pursuant to Rule 12(b)(1), the Court must dismiss a case for lack of subject matter jurisdiction if the Court "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  The party asserting subject matter jurisdiction bears the burden of establishing that jurisdiction exists by a preponderance of the evidence. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova*, 201 F.3d at 113).  The Court accepts all material factual allegations in the complaint as true, *id.* (quoting *Natural Resources Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006)), but it does not presume the truthfulness of the complaint's jurisdictional allegations, *Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 469–70 (S.D.N.Y. 2005) (quoting *Augienello v. Federal Deposit Insurance Corp.*, 310 F. Supp. 2d 582, 588 (S.D.N.Y. 2004)).  When evaluating a Rule 12(b)(1) motion, the Court may consider evidence outside of the pleadings to resolve the disputed jurisdictional fact issues. *Zappia Middle East Construction Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  However, the Court should refrain from drawing inferences in favor of the party asserting subject matter jurisdiction on a Rule 12(b)(1) motion. *People United for Children, Inc.*, 108 F. Supp. 2d 275, 283 (S.D.N.Y.

2000) (citing *Atlantic Mutual Insurance Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F.Supp.2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits, and documents incorporated by

4

reference in the complaint." *Doe v. N.Y. Univ.*, No. 20 Civ. 1343 (GHW), 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

### III. DISCUSSION

#### A. Standing

##### 1. Concrete Harm

"Article III standing requires a concrete injury even in the context of a statutory violation." *See e.g., TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("[A]n injury in law is not an injury in fact."); *Hernandez v. Wonderful Co. LLC*, No. 23 Civ 1242 (ER), 2023 WL 9022844, at *5 (S.D.N.Y. Dec. 29, 2023). Physical and monetary harms are considered concrete. *TransUnion*, 594 U.S. at 425. An informational injury is one where an individual is "deprived of information to which he is entitled." *See Mills v. Saks.com LLC*, No. 23 Civ. 10638 (ER), 2025 WL 34828, at *4 (S.D.N.Y. Jan. 6, 2025) (quoting *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022)). Informational injury is considered concrete when the plaintiff identifies "downstream consequences" from failing to receive required information. *TransUnion*, 594 U.S. at (quoting *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)).

Gotham argues that Summerville lacks standing because he merely suffered an informational injury. Doc. 16 at 18–21. This would be true if Summerville cannot show "adverse effects" from the lack of information. *Trichell*, 964 F.3d at 1004. Here, Summerville suffered "an economic injury that flowed from [Gotham's] purported violation of the statute." *See Charles v. Color Factory, LLC*, No. 24 Civ. 322 (JSR), 2024 WL 1693236, at *3 (S.D.N.Y. Apr. 19, 2024) (finding that a consumer was injured by a website's failure to disclose the total cost of the tickets). Like the plaintiff in *Color Factory*, Summerville allegedly selected his tickets on the understanding that the total cost of each ticket was $20. Gotham did not disclose the service fee of $4.50 until after

5

Summerville selected the seat, in violation of the ACAL, which requires that the ticket price "shall not increase during the purchase process." As a result, Summerville paid an extra $4.50 per ticket, a concrete economic injury that confers standing in the instant case.

### 2. Past Injury

Gotham additionally argues that Summerville lacks standing to seek injunctive relief because at most he only suffered a past injury. Doc. 16 at 25.

"[A] plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm." *Hernandez*, 2023 WL 9022844, at *5 (quoting *Harty v. Simon Property Group, L.P.*, 428 F. App'x 69, 71 (2d Cir. 2011) (summary order)). There is no exception to demonstrating future injury when the plaintiff is pursuing a class action. *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016). The adverse harms must be pled in the complaint and the Court does not infer standing when a plaintiff failed to establish standing "in his papers." *Metcalf v. TransPerfect Translations Int'l, Inc.*, 632 F. Supp. 3d 319, 339 (S.D.N.Y. 2022) (citing *Epstein v. JPMorgan Chase & Co.*, 2014 WL 1133567, at *7 n.6 (S.D.N.Y. Mar. 21, 2014)).

Summerville does not allege that he intends to return to the Comedy Club in the future and therefore does not show a likelihood of future injury. *See Buonasera*, 208 F. Supp. 3d at 565 (rejecting standing to seek injunctive relief because the plaintiff did not allege that he would purchase the defendant's product in the future). This precludes Summerville from having standing to seek injunctive relief either for himself or on behalf of a putative class. *Id.*

Accordingly, Gotham's motion to dismiss Summerville's claim is granted insofar as it requests injunctive relief.

### B. New York Arts & Cultural Affairs Law

New York's ACAL requires that "[e]very operator or operator's agent of a place of entertainment shall . . . disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser." *See* N.Y. Arts & Cult. Aff. Law § 25.07(4). In 2022, the ACAL added the requirements that operators disclose the total cost of a ticket "*prior to the ticket being selected for purchase,*" and not to increase the total cost during the purchasing process. *Id.* The amendment was a response to a 2021 legislative investigation into the "potentially unfair, deceptive, and anti-consumer practices" in the state's live event ticket industry. New York Sponsors Memorandum, 2022 S.B. 9461. The 2021 investigative report recommended that the total cost of a ticket, including the service fee, should be disclosed at the earliest stage of a transaction, i.e. "when tickets are first viewed on a website." Doc. 18-1 at 30.

The parties do not dispute that Gotham is an "operator . . . of a place of entertainment." The parties disagree on two points: (1) whether the service fee should have been revealed when Summerville first saw a list of seat prices or when he first agreed to the service fees and taxes; and (2) whether the total cost of the ticket increased during the purchasing process. Doc. 16 at 18; Doc. 17 at 9, 12–13.

Gotham premises both arguments on the assertion that "[t]he service fees and taxes are not part of the ticket price." Doc. 16 at 18. Gotham does not dispute that a ticket purchaser cannot purchase a ticket from its website without paying the service fee. The service fee is thus "ancillary fees that must be paid in order to purchase the ticket" and counts towards the total cost of the ticket. *See* § 25.07(4).

Gotham further argues that "the ticket is not 'selected for purchase' until the customer first agrees to the service fees and taxes." Doc. 16 at 18. Here, Summerville viewed the tickets for the first time on the event page, where he could select seats. As

7

only the ticket price of $20 was shown at this stage, Gotham violated the duty to disclose the total ticket price as required by the ACAL. Because later Summerville ultimately had to pay $24.50 per ticket to purchase the tickets, the total cost of the tickets necessarily increased during the purchasing process.

Accordingly, Summerville stated a claim that Gotham violated the ACAL.

### C. Voluntary Payment Doctrine

The voluntary payment doctrine "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 105–06 (S.D.N.Y. 2022).

Gotham argues that Summerville's claims are barred by the voluntary payment doctrine. Doc. 16 at 21. Gotham proffers four website displays after the seat selection page and contends that Summerville had four opportunities, on each such page, to back out before purchasing his tickets.[2] *Id.*

However, the voluntary payment doctrine does not apply when a plaintiff challenges full disclosure by the defendant. *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir.2009); *Color Factory*, 2024 WL 1693236, at *4. As an affirmative defense, courts are reluctant to dismiss claims under the voluntary payment doctrine at the pleading stage. *Vasell v. Seatgreek Inc.*, No. 24 Civ. 932 (NCM) (JRC), 2025 WL 240912, at *14 (E.D.N.Y. Jan. 17, 2025) (quoting *Morgulis v. Bus Patrol Am., LLC*, No. 24 Civ. 113, 2024 WL 3639126, at *5 (S.D.N.Y. Aug. 1, 2024)). Where the pleadings "do not establish whether Plaintiffs knew or should have known that the product prices were" misleading, dismissal under voluntary payment doctrine is premature. *Spagnola*, 574 F.3d at 73 (finding that the plaintiff's five policy renewals did not provide a conclusive answer at the motion to dismiss stage as to whether the plaintiff knew the basis upon which his coverage was increased).

---

[2] At the oral argument held on December 5, 2024, Summerville conceded that the four website displays were "incorporated by reference" in the complaint. Doc. 22 at 8.

In distinguishing *Color Factory*, Gotham argues that there, the lack of full disclosure was based on a failure to delineate between taxes and fees, whereas Gotham specified that service fees were $4.50 and sales tax was $1.77. Doc. 25 at 7–8. However, Color Factory was found non-compliant with the ACAL not because it did not delineate between taxes and fees. As the ACAL does not require a disclosure of taxes prior to the ticket being selected for purchase, a categorical non-disclosure of "taxes and fees" until the final check out page plausibly entailed a non-disclosure of fees, which violated ACAL's requirements of full disclosure of service fees. *See Color Factory*, 2024 WL 1693236, at *1, *4. Therefore, Color Factory is not distinguished for its analysis of the voluntary payment doctrine.

As the Court analyzed above, Summerville adequately alleges that Gotham failed to disclose the total cost of a ticket including the service fee after he selected the tickets. Doc. 1 ¶ 27; § 25.07(4). Because of the alleged lack of full disclosure, the voluntary payment doctrine is not a basis to dismiss Summerville's motion at this juncture.

### D. Amount in Controversy

Federal jurisdiction in this putative class action is premised on the Class Action Fairness Act ("CAFA"). Pursuant to CAFA, the amount in controversy requirement is satisfied when the plaintiff can show that: (1) the class has more than 100 members; (2) the parties are minimally diverse; and (3) the matter in controversy exceeds the sum or value of $5,000,000. *See S.A.M. Management Co. v. Consolidation Edison Co. of New York, Inc.*, No. 22 Civ 3494 (ER), 2023 WL 5935691, at *4 (S.D.N.Y. Sept. 11, 2023) (citing *Standard Fire Insurance Co. v. Knowles*, 568 U.S. 588, 592 (2013)).

Gotham makes two arguments regarding the amount of controversy: (1) the statutory penalty of $50 is constitutionally excessive; and (2) Summerville does not meet the amount in controversy threshold to establish federal diversity jurisdiction. Doc. 16 at 8, 22–24; 28 U.S.C. sec. 1332(d)(2).

First, the assessment of damages is premature when no damages have been awarded. *See, e.g., Georgiou v. Harmon Stores, Inc.*, No. 22 Civ 02861 (BMC), 2023 WL 112805, at *6 (E.D.N.Y. Jan. 5, 2023); *Hodel v. Virginia Surface Mining & Reclamation Association, Inc.*, 452 U.S. 264, 304 (1981) (finding defendant's due process challenge premature because the defendants had not had "civil penalties assessed against them"). At this juncture, the Court does not pass on the constitutionality of the $50 statutory penalty imposed by the ACAL.

Second, pursuant to the CAFA, an "allegation that the amount in controversy exceeds $5 million creates a presumption that the amount in controversy requirement is met." *Metcalf*, 632 F. Supp. 3d at 334; *Wolde-Meskel v. Vocational Instruction Project Community Services, Inc.*, 166 F.3d 59, 63 (2d Cir. 1999) ("[A] rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."). The defendant has the burden to show "to a legal certainty" that the amount in controversy is "so patently insufficient" to satisfy the jurisdictional minimum. *See e.g., Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir.); *Blumenthal v. Sea Hotel Co., LLC*, No. 99 CIV. 4881 (AJP), 2000 WL 1349249, at *3 (S.D.N.Y. Sept. 19, 2000). The legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim. *Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994).

Here, Summerville seeks to recover $50 and to certify a class that numbers at "at least in the thousands."[3] Doc. 1 ¶¶ 4, 19, 32. Gotham challenges whether Summerville meets the CAFA threshold of $5,000,000. Doc. 16 at 23–25. Gotham argues that Summerville's damages are limited to the actual damage of $4.50 per ticket, and that he would therefore need to allege that more than 1,111,000 people are in the class, which he does not do. *Id.* at 24.

---

[3] Summerville seeks to "recover his actual damages or fifty dollars, whichever is greater." Doc. 1 ¶ 32.

Setting aside the size of the class, Gotham's argument does not render Summerville's claim patently impossible to a legal certainty. *Tongkook America*, 14 F.3d at 785. Again, to dismiss Summerville's claims, Gotham must show that Summerville *cannot* recover the claimed amount, not that he *does not* allege sufficient fact to establish Article III jurisdiction. And Gotham failed to demonstrate it here.

## IV. CONCLUSION

For the foregoing reasons, Gotham's motion to dismiss is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 15.

It is SO ORDERED.

Dated: February 24, 2025
       New York, New York

                                          EDGARDO RAMOS, U.S.D.J.